**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JORGE ABAYUBAL FERIA,

       Plaintiff,

vs.                                             Case No. 3:17-cv-371-J-JRK

NANCY A. BERRYHILL,
Deputy Commissioner for Operations
of the Social Security Administration,
performing the duties and functions not
reserved to the Commissioner of
Social Security,

       Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Jorge Abayubal Feria ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of problems with his arms, elbows, and hands; carpal tunnel syndrome in both hands; hypertension; diabetes; and six surgeries on his elbows and hands. Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed November 16, 2017, at 104, 110, 222 (emphasis omitted). On October 8, 2013, Plaintiff filed an application for DIB alleging an onset disability date of

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed November 16, 2017; Reference Order (Doc. No. 14), entered November 17, 2017.

December 31, 2007. Tr. at 209.[2] Plaintiff's application was denied initially, see Tr. at 104-109, 117, 118-20, and was denied upon reconsideration, see Tr. at 103, 110-16, 121-25.

On March 28, 2016, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 61-102. At the hearing, Plaintiff amended his alleged onset disability date to May 2, 2012. Tr. at 72-73. At the time of the hearing, Plaintiff was fifty-eight years old. Tr. at 104, 110 (indicating Plaintiff's date of birth). On August 18, 2016, the ALJ issued a Decision, finding Plaintiff not disabled from May 2, 2012 through December 31, 2012, the date last insured. Tr. at 24-54.

On October 12, 2016, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 15. On January 23, 2017, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On April 3, 2017, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following argument: "[Defendant] erred in ignoring the opinions and findings of Plaintiff's treating physicians, surgeons, and occupational/vocational evaluators, and by simply assuming for the purposes of the Decision rendered, that . . . Plaintiff was capable of perfor[m]ing medium work, thereby ignoring and preempting any consideration of . . . Plaintiff's advanced age, language barriers/functional illiteracy, and lack of transferable skills." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 20; "Pl.'s Mem."), filed February 5, 2018, at 11 (emphasis and some capitalization

---

[2] Although actually completed on October 8, 2013, see Tr. at 209, the protective filing date of the application is listed elsewhere in the administrative transcript as October 7, 2013, see, e.g., Tr. at 104, 110. This does not affect the Court's opinion.

omitted). On April 3, 2018, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing Plaintiff's argument. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ engaged in the five-step sequential inquiry. See Tr. at 26-54. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of May 2, 2012, through his date last insured of December 31, 2012." Tr. at 26 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: status post dog bite with puncture wound and scarring and resulting left upper extremity trauma; status post left lateral epicondylectomy; status post left ulnar nerve transposition with flexor tendon

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

lengthening; status post right ulnar nerve transposition; carpal tunnel syndrome, status post bilateral carpal tunnel releases; and, diabetes mellitus." Tr. at 27 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 32 (emphasis and citation omitted).

> The ALJ determined that Plaintiff had the following RFC:
>
> [Plaintiff could] work as defined in 20 [C.F.R. §] 404.1567(c) except [Plaintiff] could push and pull with the non-dominant left upper extremity twenty pounds occasionally and ten pounds frequently. [Plaintiff] also had the following additional limitations through his date last insured. He could frequently climb ramps and stairs. He could frequently balance and occasionally crawl. He could not climb ladders, ropes or scaffolds. He could have occasional exposure to cold temperature extremes. He could frequently, bilaterally handle, finger, and feel. He could frequently, bilaterally use hand controls. He would have been off task a maximum of five percent of the workday in addition to the normal workday breaks of fifteen minutes in the morning, thirty minutes at lunch, and fifteen minutes in the afternoon.

Tr. at 32-33.

At step four, the ALJ relied on the testimony of the VE and found that "[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work." Tr. at 51 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("[fifty-five] years old . . . on the date last insured"), education, work experience, and RFC, the ALJ again relied on the testimony of the VE and found that "[t]hrough the dated last insured . . . there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Tr. at 51-52 (emphasis and citation omitted). Specifically, the ALJ found that Plaintiff could have performed the following jobs: "laundry worker"; "floor worker"; and "machine feeder." Tr. at 53 (capitalization omitted). The ALJ concluded that Plaintiff "was not

under a disability . . . at any time from May 2, 2012, the amended onset date, through December 31, 2012, the date last insured." Tr. at 54 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

In essence, Plaintiff argues the ALJ's finding that Plaintiff was capable of medium work is not supported by substantial evidence. See generally Pl.'s Mem. Plaintiff contends

the ALJ failed to "consider or acknowledge the findings and opinions of Dr. [Joseph T.] Barmakian,[4] Ms. [Ellen Rader] Smith,[5] and other healthcare providers." Id. at 13. He asserts that had the ALJ found that Plaintiff was capable of performing light work or sedentary work, the ALJ would have been required to address Plaintiff's "advanced age, language barriers, and transferability of skills" and apply "Grid Rules 201.02 and 202.02" of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Id. at 10.

Responding, Defendant argues the ALJ addressed the opinions of Dr. Barmakian and Ms. Smith, specified the weight assigned to them, and provided sufficient reasons for those weights. Def.'s Mem. at 13-15. As to Plaintiff's argument regarding "other healthcare providers," Defendant asserts that Plaintiff fails to identify them, but to the extent he is referring to Dr. Michael J. Bercik[6] and Dr. Mark A. Gurland,[7] Defendant contends the ALJ considered their opinions and properly gave them limited weight. Id. at 16-17.

The Regulations[8] establish a "hierarchy" among medical opinions[9] that provides a

---

[4]  Dr. Barmakian treated Plaintiff for his carpal tunnel syndrome. See Tr. at 917-18, 936-48.

[5]  Ms. Smith is an occupational therapist, who conducted a functional evaluation of Plaintiff's left upper extremity on January 31, 2011. See Tr. at 920-30; Tr. at 231 (duplicate of last page of evaluation note). She also evaluated Plaintiff in May 2010, Tr. at 920, but the findings of that evaluation are not part of the administrative transcript.

[6]  Dr. Bercik evaluated Plaintiff on September 15, 2008. Tr. at 312-15.

[7]  Dr. Gurland evaluated Plaintiff on March 1, 2010 and on January 31, 2011. Tr. at 933. The administrative transcript contains only the evaluation note from January 31, 2011. See Tr. at 933-34.

[8]  On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claim before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[9]  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[10] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment

---

[10] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-7-

relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. it. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Hargress, 883 F.3d at 1305 (citation omitted); Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. When an ALJ does not describe the weight assigned to medical opinions, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Cowart, 662 F.2d at 735. It is not up to a reviewing court to scour the record to find support for an ALJ's decision; rather, the ALJ must support his or her decision within. See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir.1984) (declining "to affirm simply because some rationale might have supported the ALJ's conclusion").

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, as noted, the ALJ found Plaintiff could perform medium work with additional limitations. Tr. at 32-33. In making this finding, the ALJ discussed in detail the medical

evidence and opinion evidence, including the medical notes and opinions of Dr. Barmakian, Ms. Smith, Dr. Bercik, and Dr. Gurland. See Tr. at 37, 43-44 (discussion and assessment of Ms. Smith's evaluation note and opinions); Tr. at 37, 46 (discussion and assessment of Dr. Barmakian's treatment notes and opinions); Tr. at 36, 46 (discussion and assessment of Dr. Bercik's evaluation note and opinions); Tr. at 46-47 (discussion and assessment of Dr. Gurland's opinion). Thus, Plaintiff's argument that the ALJ "ignored" the opinions of these individuals fails.

As to Plaintiff's contention that the ALJ's RFC determination is erroneous, Plaintiff merely asserts that he "suffered from severe impairments as to both upper extremities," and he cites certain findings and opinions contained in the evaluation note of Ms. Smith and the treatment notes of Dr. Barmakian. See Pl.'s Mem. at 11-12. The ALJ discussed and considered these findings and opinions and specified the weight given to each medical opinion and the reasons therefor. See Tr. at 36-37, 43-47. These reasons are supported by substantial evidence. It is not for this Court to reweigh the evidence.

Because the ALJ properly concluded that Plaintiff could perform medium work with additional restrictions, the ALJ did not err in using the Grids as a framework to find that Plaintiff's educational level and transferability of job skills were "not material." Tr. at 51-52. The Grids, used as a framework, support a finding that educational level and transferability of skills would not have an impact on whether Plaintiff was disabled. See Grid Rules 203.11-203.13; Tr. at 51 (indicating Plaintiff's past work experience is classified as semi-skilled and skilled).

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**ORDERED** at Jacksonville, Florida on September 14, 2018.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record